# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES KOZAK,<br>　　　　Plaintiff | ) <br> ) | C.A. 07-120 Erie |
| 　　　　v. | ) <br> ) <br> ) | District Judge Cohill<br>Magistrate Judge Baxter |
| DR. MARK BAKER, et al.,<br>　　　　Defendants. | ) <br> ) | |

## MAGISTRATE'S REPORT AND RECOMMENDATION

### I.　　RECOMMENDATION

It is respectfully recommended that:

1. Plaintiff's Motion for Summary Judgment [Document # 29] be denied; and,

2. Defendants' Motion for Summary Judgment [Document # 33] be granted.

### II.　　REPORT

####　　A.　　Relevant Procedural History

On May 17, 2007, Plaintiff James Kozak, an inmate incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Named as Defendants are: Dr. Mark Baker ("Baker"), Medical Director at SCI-Albion; and Daniel Telega ("Telega"), a physician's assistant at SCI-Albion.

Plaintiff alleges that his rights under the eighth amendment to the United States Constitution have been violated as a result of Defendants' deliberate indifference to his degenerative hip disorder. (Complaint at Section IV.C).  In particular, Plaintiff alleges that (i) Defendants incorrectly diagnosed and treated his hip condition as "bilateral hip arthritis;" (ii) Defendants delayed consulting with an orthopedic specialist for a number of years, which "caused him unnecessary pain and a worsening of his condition;" (iii) after he was finally allowed to see an orthopedic surgeon, it was discovered that Plaintiff has a degenerative hip

disorder that allegedly "would require both hips to be replaced;" and (iv) Defendants have failed to schedule him for hip replacement surgery in the two years since he was seen by the orthopedic surgeon. (Id.). As relief for his claims, Plaintiff seeks compensatory and punitive damages.

After Defendants filed an Answer to Plaintiff's Complaint, Plaintiff filed a motion for summary judgment alleging that there are no genuine issues of material fact in dispute and he is entitled to judgment as a matter of law. [Document # 29]. Defendants have filed a response to this motion [Document # 35], as well as their own motion for summary judgment, arguing that Plaintiff's claim does not rise to the level of a constitutional violation. [Document # 34]. Plaintiff has filed a brief in opposition Defendants' motion, arguing, somewhat incongruously, that "material factual issues exist for trial therefore, summary judgment is not proper." [Document # 38]. This matter is now ripe for consideration.

### B. Relevant Factual History

On July 1, 2002, Plaintiff had a bilateral x-ray of his hips conducted at the direction of Defendant Baker, which revealed mild degenerative joint disease, with no other significant abnormality. (Document # 32, Exhibit E). From May 23, 2005, through June 12, 2006,[1] Plaintiff was seen by SCI-Albion's medical staff on a monthly basis for bilateral hip pain, and on each occasion was prescribed Ultram to manage the pain. (See Document # 32, Exhibit B). On June 12, 2006, Defendant Baker ordered another bilateral x-ray of Plaintiff's hips, which revealed mild progressive arthritic changes of the bilateral hip joints, but was otherwise similar to the July 1, 2002, x-ray study. (Document # 32, Exhibits C and D).

From June 19, 2006 through October 9, 2006, Plaintiff was again seen by SCI-Albion's medical staff on a monthly basis, and was prescribed Ultram during each visit. (Document # 32,

---

[1] Because Plaintiff alleges that his problems with Defendants have been ongoing since June 1, 2005, Defendants have submitted to this Court copies of Plaintiff's medical records during the relevant period of time, beginning May 23, 2005. (See Exhibits attached to Document # 32).

Exhibit B). Due to Plaintiff's continued complaints of bilateral hip pain, Defendant Baker referred Plaintiff to SCI-Albion's orthopedic clinic on November 21, 2006, at which time pain medication was ordered and the need for weight loss was stressed. (Document # 32, Exhibit F). On December 19, 2006, Defendant Baker ordered Plaintiff to be seen in the orthopedic clinic for a follow-up. (Document # 32, Exhibit G). Plaintiff was seen again in the orthopedic clinic on February 20, 2007, at which time he was told he would have to lose 25 pounds before being considered for hip replacement surgery. (Document # 32, Exhibits H and I).

On April 17, 2007, Plaintiff was examined by Stephen F. Habusta, D.O., a board certified orthopedic surgeon, upon referral from Defendant Baker. Dr. Habusta opined that Plaintiff had bilateral hip disease with avascular necrosis and needed bilateral total hip replacement. (Document # 32, Exhibit L). Dr. Habusta also referred Plaintiff to physical therapy to treat his hip pain and to prepare him for the planned hip replacement surgery. (Document # 32, Exhibits J and K). Plaintiff followed up with Defendant Baker on April 23, 2007, who prescribed Elavil for pain. (Document # 32, Exhibit B). Plaintiff was seen again by Defendant Baker on May 16, 2007, at which time Defendant Baker approved an increase in pain medication. (Id.).

On May 22, 2007, Defendant Baker and Dr. Habusta agreed to have an MRI of Plaintiff's hips conducted to rule out avascular necrosis. (Document # 32, Exhibit M). A pre-MRI screen of Plaintiff's hips was conducted on June 20, 2007, and revealed no metallic foreign bodies in the hip orbits. (Document # 32, Exhibit N). The MRI of Plaintiff's hips was subsequently conducted on August 29, 2007, and revealed "some narrowing and osteophyte change bilaterally" in the hip joints, with "no evidence to suggest" acute fracture, hip joint effusion, or avascular necrosis. (Document # 32, Exhibit O).

On September 17, 2007, Defendant Baker approved an increase in Plaintiff's pain medication for his chronic hip pain. (Document # 32, Exhibit B). On October 2, 2007, Plaintiff had a follow-up visit with Dr. Habusta, who noted that the most recent MRI results suggested osteoarthritis, rather than avascular necrosis, and that Plaintiff was "ambulatory and without assistive devices." (Document # 32, Exhibit P). As a result, Dr. Habusta opined that Plaintiff,

3

"at his young age, ... is not considered a primary candidate for total hip [replacement]," and that "[c]onservative management with weight loss is a better way to pursue this." (Id.).

In light of Plaintiff's complaints of lower back pain and bilateral leg numbness, Defendant Baker ordered an x-ray to be taken of Plaintiff's lumbosacral spine on October 3, 2007, which revealed only mild L5-S1 degenerative disc disease, with no fracture or significant bony deformity. (Document # 32, Exhibit Q). Plaintiff was also continued on pain medication.

On January 22, 2008, Plaintiff had a follow-up visit with Dr. Habusta, who noted that Plaintiff was scheduled to have an MRI of his low back conducted at SCI-Smithfield, but Plaintiff didn't go because he was worried about experiencing pain on the trip. (Document # 32, Exhibit R). Dr. Habusta emphasized the importance of having the MRI done and asked for the MRI to be rescheduled, at which time Plaintiff was to be given Vicodin to help alleviate any pain associated with the trip to Smithfield. (Document # 32, Exhibit S). No further medical records have been provided to this Court.

### C. Standard of Review
#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial

burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim

if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D. Discussion

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[2] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional

---

[2] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

6

refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

As the medical records indicate, between the dates of May 24, 2005, and January 22, 2008, Plaintiff was seen by SCI-Albion's medical staff on, essentially, a monthly basis for treatment of his chronic hip pain. In addition, Plaintiff was seen in SCI-Albion's orthopedic clinic on a number of occasions, and had several diagnostic tests performed, including x-rays of his hips and/or lower back on July 1, 2002, June 12, 2006 and October 3, 2007, and an MRI of his hips on August 29, 2007. This plethora of medical attention and treatment belies Plaintiff's claim that Defendants were deliberately indifferent to his medical needs.

Moreover, although the medical record reflects that Plaintiff was informed by Dr. Habusta on April 17, 2007, that he needed bilateral hip replacement, subsequent MRI results caused Dr. Habusta to change his opinion on October 2, 2007, and conclude that Plaintiff is not a good candidate for hip replacement surgery. Yet, Plaintiff still claims that he is being denied necessary hip replacement surgery and that this denial amounts to deliberate indifference to his medical needs. However, this is clearly a case involving Plaintiff's disagreement with the course of treatment he has been receiving from SCI-Albion's medical staff, which is insufficient to sustain a cognizable constitutional claim. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

Based on the foregoing, therefore, Defendants should be granted summary judgment and this case should be dismissed.

**III CONCLUSION**

For the foregoing reasons, it is respectfully recommended that:

1. Plaintiff's Motion for Summary Judgment [Document # 29] be denied; and,

2. Defendants' Motion for Summary Judgment [Document # 33] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: September 30, 2008

cc: The Honorable Maurice B. Cohill
United States District Judge